# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

TREVER CHASE CANNON,

        Plaintiff,

    v.

ROBERT J. ROBINSON, in his individual and
official as an employee of the Savannah Police
Department; and THE MAYOR AND
ALDERMEN OF THE CITY OF
SAVANNAH,

        Defendants.

CIVIL ACTION NO.: 4:18-cv-176

## O R D E R

This lawsuit grows out of Plaintiff Trever Chase Cannon's now-overturned state court
convictions for two counts of first-degree vehicular homicide.  Plaintiff contends that Defendant
Robert J. Robinson, a former detective with the Savannah-Chatham Metropolitan Police
Department, maliciously fueled Plaintiff's prosecution and convictions by withholding
exculpatory evidence and fabricating inculpatory evidence during the investigation and
prosecution.  Specifically, Plaintiff maintains that in an official report regarding the traffic
collision giving rise to Plaintiff's convictions, Defendant Robinson grossly misrepresented an
interview of a witness to the collision.  Also, though the interview was videorecorded, the
prosecuting attorneys, relying on the police department, told the state trial court and Plaintiff's
criminal defense counsel that the video no longer existed.  Plaintiff contends that Robinson
prevented the video from being discovered.  After the video was uncovered, the trial court

vacated Plaintiff's conviction, and the State of Georgia moved to *nolle prosequi* Plaintiff's criminal charges.

Plaintiff brought this civil action pursuant to 42 U.S.C. § 1983 alleging that Robinson and the Mayor and Aldermen of the City of Savannah violated his constitutional rights. (Doc. 1.) Defendant Robinson filed a Motion to Dismiss all of Plaintiff's claims against him. (Doc. 9.) Robinson argues that Plaintiff's claims are untimely and that Plaintiff fails to allege a causal connection between Defendant Robinson's conduct and the violation of Plaintiff's constitutional rights. (Id.) As explained below, Robinson's arguments for dismissal are entirely unpersuasive and border on frivolity.[1] Thus, the Court **DENIES** Robinson's Motion to Dismiss.

## BACKGROUND[2]

On February 22, 2013, Plaintiff was involved in an automobile collision on Interstate 516 in Savannah, Georgia, that resulted in two fatalities. (Doc. 1, p. 2.) Defendant Robinson responded to the scene and interviewed Plaintiff and eyewitnesses to the collision. (Id. at p. 3.) Plaintiff told Robinson that the collision was caused by another vehicle that had improperly merged onto I-516 in front of him causing Plaintiff to swerve and lose control of his truck. (Id.) Robinson interviewed eyewitness Tom Shadle, whose statements supported Plaintiff's account of the collision. (Id.) Shadle stated,

> I was coming off Veteran's Parkway going onto eastbound 516, coming down the merge lane to merge onto 516. Had one eye on the road ahead of me and one eye on the mirror to look for traffic that I was going to merge into. There was a vehicle ahead of me that seemed like to me they should have yielded to the traffic that was on 516 but they didn't[;] they continued to merge onto 516. There was a pickup truck that I observed on 516, appeared that he swerved to avoid hitting that

---

[1] The Court does not characterize Defendant's positions in this manner lightly or for mere hyperbole. Defendant's arguments and in particular his lack of supporting analysis are truly regrettable.

[2] The Court takes the following facts from Plaintiff's Complaint and assumes them to be true, as it must at this stage.

> car and another vehicle that was in the inside lane on 516. That caused him to
> cross the median and I believe he rolled maybe multiple times . . . .

(Id. at p. 3.)  Mr. Shadle's statement was recorded, which Robinson noted in his official report.

(Doc. 1-3, p. 1.)   However, in that report, Robinson grossly misstated Mr. Shadle's actual

statement.  (Id.)  Robinson stated,

> Mr. Shadle advised that he was exiting of [sic] Chatham Parkway onto I-516 and
> he was travelling eastbound on I-516, Mr. Shadle was behind the pickup truck and
> he advised that the pickup truck was travelling at a high rate of speed as traffic
> slowed down the pickup truck swerved from the outside lane into the inside lane
> he lost control struck the median flipped and went into the opposite lane of traffic
> and struck the SUV.

(Id.)  Thus, Robinson's report placed Mr. Shadle on the wrong roadway and falsely stated that

Mr. Shadle was traveling directly behind Plaintiff.  (Id.)  Robinson also falsely reported that Mr.

Shadle had observed Plaintiff traveling at a high rate of speed.   (Id.)  Moreover, Robinson

critically failed to mention that Mr. Shadle had observed another vehicle cause the collision by

improperly merging onto I-516 thereby forcing Plaintiff to swerve and lose control of his truck,

just as Plaintiff had claimed.  (Id.)

Based on Robinson's written report, the State of Georgia charged Plaintiff with two

counts of first-degree vehicular homicide, serious injury, and reckless driving in the Superior

Court of Chatham County.[3]  (Doc. 1, p. 4.)  At the initial phases of the criminal proceedings, the

State did not provide Plaintiff's criminal defense counsel with the recording of Mr. Shadle's

interview or the recordings of nine other witness interviews.  (Id. at p. 5.)  Thus, criminal defense

counsel filed a motion to compel production of the recordings.  (Id.)  At the hearing on that

Motion, the State represented to the Superior Court that they had asked the Savannah-Chatham

Metropolitan Police Department to locate the videos, and the police department indicated that

---

[3]  The charges against Plaintiff were filed in the Superior Court of Chatham County.  State v. Cannon, No.
CR13-22235-J2 (Superior Court of Chatham County).

after a diligent search the recordings could not be found.  (Id.; doc. 1-4, p. 11.)  As the recordings apparently no longer existed, the Superior Court could not order their production but reminded the State of its continuing obligation to provide the defense any exculpatory information. (Doc. 1-4, p. 11.)

The criminal case proceeded to trial without the benefit of the recordings.  At that trial, Plaintiff testified to the same account of the collision that he offered to Robinson immediately following the accident (that another vehicle caused the accident by suddenly and improperly merging onto Interstate 516 in front of him).  (Doc. 1, p. 5.)  To support this version of events, he relied on the testimony of his mother, who was traveling behind him in a separate vehicle, but the State attacked her testimony as biased.  (Id.)  The jury found Plaintiff guilty on all counts, and the Superior Court sentenced him to a total of 18 years' imprisonment with 8 years to serve. (Id.)

Following the criminal trial, during depositions in a civil case related to the collision, law enforcement deponents expressed their disturbance regarding the absence of the missing recordings of the interviews of witnesses to the collision.  (Id.)  One of the deponents then returned to the police department and located the missing video recording of Mr. Shadle's interview as well as video of five other witnesses.  (Id. at p. 6.)  The videos were provided to Plaintiff's civil attorney in the related case on June 20, 2016, and to his criminal counsel the following day.  (Id.; doc. 1-4, pp. 2–3.)[4]  This was the first time that Plaintiff and his criminal counsel knew that Robinson misrepresented Mr. Shadle's interview in his report and that Mr. Shadle's statements had supported Plaintiff's version of events.  (Doc. 1, p. 6.)

---

[4]  Following an evidentiary hearing on Plaintiff's motion for a new trial in Superior Court, the State found even more recordings of witness interviews.  (Doc. 1-4, p. 5.)  The Superior Court expresses its "concern" that the State failed to locate these recordings prior to the trial of the criminal case.  (Id. at n.1.)

On June 29, 2016, Plaintiff's criminal counsel filed a Motion for New Trial based upon the newly-discovered video recording.  (Id.)  On December 16, 2016, the Superior Court granted that motion.   (Doc. 1-4.)   The Superior Court relied heavily on the fact that the State's representatives had failed to turn over the recording of Mr. Shadle's interview.  (Doc. 1-4, pp. 8–14.)  The court found that, in doing so, the State had violated its obligation to provide Plaintiff and his counsel exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963). (Id.)  To reach this conclusion, the Superior Court found that the State possessed the video evidence which was favorable to Plaintiff's defense, that Plaintiff did not possess the favorable evidence, that the State suppressed the favorable evidence, and that a reasonable probability exists that the outcome of Plaintiff's criminal trial would have been different if the evidence had been provided to Plaintiff and his counsel.  (Id.)  As part of that ruling, the Superior Court determined that "the true nature of Shadle's statement was obscured by Det. Robinson, who inappropriately altered the statement in a written report."  (Id. at p. 10.)

On January 3, 2018, more than a year after the Superior Court granted the new trial motion, the State filed a Motion to *Nolle Prosequi* the case against Plaintiff.  (Doc. 1-5.)  In that Motion, the State maintained, "[a]lthough probable cause existed to arrest and indict [Plaintiff] at the time, after reviewing the current evidence, the State believes there is an insufficient basis to convict [Plaintiff] of the current charges."  (Id.)  In a memo prior to the *nolle prosequi* motion, the Assistant District Attorney noted the "significant inconsistency" between the recording of Mr. Shadle's statement and Defendant Robinson's summary of that statement and that the inconsistencies brought "the credibility of witnesses into question."  (Doc. 1, p. 7.)

On July 24, 2018, Plaintiff filed this lawsuit.  (Doc. 1.)  He explains that "[b]y the time the criminal charges against him were dropped, he had spent approximately two and a half years

in prison." (Id. at p. 8.)  Plaintiff contends that Robinson caused that wrongful incarceration. (Id. at pp. 8–10.)  According to Plaintiff, Robinson "materially and intentionally altered Mr. Shadle's statement in his official report," "withheld the video recording of Mr. Shadle's interview, thereby preventing such evidence from being turned over to Plaintiff and his defense counsel," wrote a "fraudulent and false" summary of Mr. Shadle's statement, and "instituted, or caused to be instituted a criminal proceeding against Plaintiff" resulting in Plaintiff's malicious prosecution and wrongful detention.  (Id.)  Robinson's actions caused Plaintiff "loss of money, loss of income, pain, suffering, embarrassment, humiliation, extreme mental anguish, and severe emotional distress."  (Id. at p. 10.)  Through this lawsuit, Plaintiff seeks to recover monetary damages for those injuries as well as punitive damages.  (Id. at p. 14.)

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

In addition to accepting all factual allegations as true, the Court may consider a document attached to a motion to dismiss, without converting it to a summary judgment motion, where the attached document is: "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citation omitted). Moreover, the Court "may take judicial notice of [public records] without converting a motion to dismiss into a motion for summary judgment." Universal Express, Inc. v. United States SEC, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam) (citations omitted); see also Laskar v. Peterson, 771 F.3d 1291, 1295 n.3 (11th Cir. 2014) (stating district courts may properly consider public records and certain documents attached to a motion to dismiss in resolving the motion).

## DISCUSSION

### I.    Legal Standards for Plaintiff's Claims Against Defendant Robinson

#### A.    Withholding Exculpatory Evidence

Plaintiff alleges that by withholding the video of the interview of Mr. Shadle and concealing the exculpatory nature of the interview in his written report, Defendant Robinson violated Plaintiff's due process rights.[5]  (Doc. 1, pp. 8–9.)  In Brady, the Supreme Court held that

---

[5]  Plaintiff cites the Fifth Amendment to the United States Constitution for his claims that Robinson suppressed exculpatory evidence. Id. However, because Defendant Robinson was a state rather than federal actor, these claims arise under the Fourteenth Amendment. See Ambrose v. City of New York, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) ("Because Plaintiff's lawsuit does not allege any deprivation of his rights by the federal government, any due process claim he has against the City is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment.") Thus, the Court will construe these claims as proceeding under the Fourteenth Amendment. See, e.g., Diplarakos v. Poole, 974 F.2d 1341, 1 n.1 (9th Cir. 1992) ("[Plaintiff] alleges a violation of her Fifth

"the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The prosecution has a duty to disclose favorable evidence even absent a request by the defendant "if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." United States v. Agurs, 427 U.S. 97, 107 (1976). Moreover, the prohibition against the concealment of exculpatory evidence rests not only with the prosecuting attorney but also the police. McMillian v. Johnson, 88 F.3d 1554, 1569 (11th Cir. 1996) ("Our case law clearly established that an accused's due process rights are violated when the police conceal exculpatory or impeachment evidence."); Freeman v. State of Georgia, 599 F.2d 65, 69 (5th Cir. 1979)[6] ("'The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure. . . . The duty to disclosure [sic] is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused.'") (quoting Barbee v. Warden, Md. Penitentiary, 331 F.2d 842, 846 (4th Cir. 1964)).

A criminal defendant asserting that his prosecution was tainted by a Brady violation must prove three elements: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) this favorable evidence was "suppressed by the State, either willfully or inadvertently;" and (3) the defendant suffered prejudice as a result.

---

Amendment right to due process. Because [Plaintiff] was convicted in state court, we construe her claim as one alleging a deprivation of her Fourteenth Amendment right to due process."). This construction will not affect the analysis of Plaintiff's claims against Robinson. See Medical Mut. v. deSoto, 245 F.3d 561, 575 (6th Cir.2001) ("[T]he language and policies behind the Due Process Clause of the Fourteenth Amendment are essentially the same as those behind the Due Process Clause of the Fifth Amendment.").

[6] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding on this Court. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981).

<u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 611 F.3d 740, 745–46 (11th Cir.2010) (internal quotations omitted). "[T]here is no suppression if the defendant knew of the information or had equal access to obtaining it." <u>Parker v. Allen</u>, 565 F.3d 1258, 1277 (11th Cir. 2009). To prove the prejudice (or materiality) prong, the criminal defendant must demonstrate "'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Id.</u> at 746 (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985)). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1237 (11th Cir. 2007). If a convicted defendant satisfies these elements, his conviction must be vacated. <u>Poventud v. City of New York</u>, 750 F.3d 121, 133 (2d Cir. 2014) ("the remedy for a <u>Brady</u> violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the <u>Brady</u> material available to her").

In addition to having his criminal conviction set aside, an individual who is the subject of a <u>Brady</u> violation may also seek civil relief via Section 1983. Pertinently, the aggrieved party may bring a lawsuit for violation of his due process rights against an officer who failed to disclose impeaching or exculpatory evidence. <u>McMillian</u>, 88 F.3d at 1567 n.12 ("We agree that § 1983 provides a cause of action for a violation of the due process right to a fair trial that is protected by <u>Brady</u>."); <u>Barber v. Doe</u>, No. 09–60635–Civ–MORENO, 2010 WL 3384766 at *6 (S.D. Fla. Aug. 5, 2010) ("A former criminal defendant who was denied his due process right to a fair trial as a result of withholding of exculpatory evidence may have a due process claim for money damages against a police officer under § 1983."). Though these civil claims are often referred to as "<u>Brady</u>" claims, the Eleventh Circuit Court of Appeals has stated that such a claim

"is *not* a pure <u>Brady</u> claim."  <u>Porter v. White</u>, 483 F.3d 1294, 1306 (11th Cir. 2007) (emphasis in

original).  Nonetheless, to succeed on such a civil claim, a plaintiff must first prove the same

elements that a criminal defendant must establish to prove a <u>Brady</u> violation: (1) that the state

possessed exculpatory or impeachment evidence; (2) that the state suppressed or failed to

disclose the evidence during the plaintiff's criminal proceedings; and (3) that the plaintiff

suffered prejudice as a result.  <u>Salazar v. U.S. Att'y Gen.</u>, 476 F. App'x 383, 386 (11th Cir.

2012) ("In his complaint, Salazar asserted the essential elements of a <u>Brady</u> claim: he asserted

that the prosecution intentionally and maliciously withheld exculpatory evidence from him,

which prejudiced him.").  Also, "[t]o prevail in a § 1983 claim, the plaintiff must show, in

addition to showing breach and injury, that the state official named as defendant caused the

constitutional deprivation."  <u>Barber</u>, No. 09-60635-CIV, 2010 WL 3384766, at *6.  Moreover,

unlike in the criminal context, where a criminal defendant can show a <u>Brady</u> violation

irrespective of the prosecution's level of culpability, a Section 1983 plaintiff must prove that the

civil defendant acted with more than mere negligence or inadvertence when withholding

exculpatory or impeachment evidence.  <u>Porter</u>, 483 F.3d at 1305–08.

### B.  Fabricating, Falsifying, and Altering Material Evidence

Plaintiff not only alleges that Defendant Robinson violated his due process rights by

suppressing the video evidence and hiding its exculpatory nature; he also contends that Robinson

fabricated, falsified, and altered inculpatory evidence.  Specifically, Plaintiff points out that

Robinson falsely summarized Mr. Shadle's interview in his official report.  (Doc. 1, p. 8.)  While

Mr. Shadle actually supported Plaintiff's version of events and exculpated Plaintiff, Robinson

altered Mr. Shadle's statement to inculpate Plaintiff and support the State's criminal charges.

As explained below, Defendant Robinson essentially ignored this claim in his Motion to Dismiss.  Thus, to rule on Defendant's Motion to Dismiss, the Court need not delve deeply into the legal elements of Plaintiff's claim of fabrication, falsification, and alteration of evidence. However, the use of fabricated, falsified, or materially altered evidence to obtain a conviction violates a criminal defendant's due process rights.  Miller v. Pate, 386 U.S. 1, 7 (1967) ("[T]he Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence."); Brown v. Mississippi, 297 U.S. 278, 286 (1936) (Due Process Clause forbids convictions predicated on deliberate deceptions); Limone v. Condon, 372 F.3d 39, 44–45 (1st Cir. 2004) (those charged with upholding the law are prohibited from deliberately fabricating evidence).  Moreover, just as a former defendant may bring a civil lawsuit for the withholding of exculpatory evidence, an aggrieved individual may also bring a Section 1983 claim for the fabrication, falsification and material altering of inculpatory evidence.  Paylan v. Teitelbaum, No. 1:15-CV-159-MW-GRJ, 2016 WL 1068443, at *8 (N.D. Fla. Feb. 16, 2016), report and recommendation adopted, No. 1:15CV159-MW-GRJ, 2016 WL 1069667 (N.D. Fla. Mar. 17, 2016) ("It is well established that fabricating incriminating evidence can constitute a violation of constitutional rights.") (citing Halsey v. Pfeiffer, 570 F.3d 273 (3rd Cir. 2014); Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997); Schneider v. Estelle, 552 F.2d 593 (5th Cir. 1977).  An officer's falsification of evidence in incident reports and material alteration of witnesses' statements can give rise to Section 1983 liability.  See, e.g., Spencer v. Peters, 857 F.3d 789 (9th Cir. 2017) (verdict in favor of plaintiff reinstated where evidence existed from which jury could conclude that officer deliberately falsified witness statement in report); Williams v. City of Boston, 771 F. Supp. 2d 190 (D. Mass. 2011) (plaintiff who had been convicted of and imprisoned for assault and battery stated a Section 1983 claim against the

police officers who investigated the crime where the plaintiff alleged, *inter alia*, that one officer intentionally falsified an incident report).

### C.     Malicious Prosecution

Plaintiff also maintains that Defendant Robinson violated the Fourth and Fourteenth Amendments by causing Plaintiff's malicious prosecution.  (Doc. 1, pp. 9–10.)   Plaintiff contends that Robinson maliciously instituted or caused to be instituted the criminal proceeding against Plaintiff by materially altering Mr. Shadle's witness statement.  (Id.)  Plaintiff contends that his prosecution depended upon the false and fraudulent report as evidenced by the fact that the State dropped the charges against him after it learned of the report's falsity.  (Id.)  As with Plaintiff's falsification of evidence claim, Robinson ignored Plaintiff's malicious prosecution claim in his Motion to Dismiss.  Therefore, the Court need not delve deeply into the elements of this claim.  However, the Eleventh Circuit recently summarized the elements of a Section 1983 malicious prosecution claim:

> In order '[t]o establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free of unreasonable seizures.'  See, e.g., Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). "[T]he constituent elements of the common law tort of malicious prosecution include[]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003).

Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019).

### II.   Denial of Motion to Dismiss as to Claims of Fabrication, Falsification, and Alteration of Evidence and Malicious Prosecution

In his Motion to Dismiss, Robinson requests that the Court dismiss all of Plaintiff's claims against him.  (Doc. 1.)  However, Robinson's supporting brief solely targets Plaintiff's due process claims for withholding exculpatory evidence.  (Doc. 1-1.)  He entirely fails to

address Plaintiff's claims that Robinson fabricated, falsified, and altered inculpatory evidence and that Robinson maliciously instituted Plaintiff's prosecution.[7]  Indeed, Robinson repeatedly refers to Plaintiff's "claim" against him.  (Doc. 9-1, p. 2 ("Plaintiff's Claim Against Robinson is Barred by the Statute of Limitation"; "Cannon's claim against Robinson is for the alleged violation of his 'clearly established constitutional right to receive unaltered material exculpatory evidence under . . . the United States Constitution.'").)  In his Reply, Robinson again focuses solely on the claim of withholding exculpatory evidence.  (Doc. 16.)  Indeed, Defendant Robinson essentially argues that if Plaintiff had brought a malicious prosecution claim rather than a claim for withholding exculpatory evidence, the malicious prosecution claim would be timely.  (Id. at pp. 2–4.)  Plaintiff's Complaint, though inartful, did allege malicious prosecution as well as falsification, fabrication, and alteration of evidence.  (See Id. at pp. 9–10.)  While related factually, as explained above, those claims are legally distinct from claims of withholding exculpatory evidence.  Because Defendant did not address these claims in his Motion to Dismiss, the Court **DENIES** Robinson's Motion to Dismiss as to Plaintiff's claims of falsification, fabrication, and alteration of evidence and malicious prosecution.[8]

---

[7]  In fairness to Robinson and his counsel, Plaintiff's Complaint is not the picture of clarity.  He asserts all of his claims against Robinson under one heading: "Suppression and Alteration of Material Exculpatory Evidence."  (Doc. 1, p. 8.)  The better practice would be for Plaintiff to set forth each of his legal claims in clearly delineated separate counts.  Nonetheless, Plaintiff clearly alleges that Robinson fabricated, falsified, and altered inculpatory evidence and maliciously caused the criminal proceedings against Plaintiff to be instituted.  (Id. at pp. 9–10.)   Additionally, Plaintiff cites a violation not only of his rights to due process but also of his Fourth Amendment rights.  (Id.)  Thus, the pleading is enough to put Defendant Robinson on notice that Plaintiff claimed fabrication, falsification, and alteration of evidence as well as a malicious prosecution.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, (2007) (Rule 8(a)(2) "requires only a short and plain statement of the claim  showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.") (quotations omitted); United Techs. Corp. v. Mazer, 556 F.3d 1260, 1272 (11th Cir. 2009) (though complaint did not specifically allege elements of claim, the complaint's allegations "either incorporate these elements or generate an inference of these elements sufficient for notice pleading").

[8]  Had Robinson moved to dismiss Plaintiff's claim for fabrication of evidence due to untimeliness, an interesting question may have been presented.  The United States Supreme Court recently granted a

III.    **Denial of Motion to Dismiss for Untimeliness as to Claims of Withholding Exculpatory Evidence**

Constitutional claims brought pursuant to Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33. Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id.

In his Motion to Dismiss, Robinson argues that Plaintiff was aware of the facts needed to support his claims against Robinson more than two years before he filed this lawsuit in July 2018. (Doc. 9-1, pp. 2–4.) Robinson maintains that Plaintiff knew of the "purportedly exculpating video as early as September 16, 2014 – when his attorneys argued for the production of the video at a Motion to Compel in criminal court." (Id. at p. 3.) Alternatively, Robinson argues that his wrongful conduct "was, if not known far earlier, fully apparent to Plaintiff by June 29, 2016, when he filed an Amended Motion for New Trial." (Id.) In response, Plaintiff

---

petition for a writ of certiorari that could have implications to that claim. McDonough v. Smith, No. 18-485, 2019 WL 166879, at *1 (U.S. Jan. 11, 2019). The question presented by the Petition for a Writ of Certiorari was "[w]hether the statute of limitations for a Section 1983 claim based on fabrication of evidence in criminal proceedings begins to run when those proceedings terminate in the defendant's favor (as the majority of circuits has held) or whether it begins to run when the defendant becomes aware of the tainted evidence and its improper use (as the Second Circuit held below)." Petition, McDonough v. Smith, No. 18-485, 2018 WL 5026294 (U.S. Oct. 12, 2018). Pertinent to the discussion in Section III of this Order, the Petition noted that eleven circuits have addressed when a Section 1983 claim for the suppression of exculpatory evidence accrues and "none of those courts has held that the statute of limitations begins to run as soon as the criminal defendant discovers that exculpatory evidence has been withheld." Id. at 21.

argues that Defendant's position "ignores clear and definitive case law on this issue."  (Doc. 13, p. 3.)  Relying on Heck v. Humphrey, 512 U.S. 477 (1994), and its progeny, Plaintiff contends that his claims imply the invalidity of his conviction and, therefore, the statute of limitations did not begin to run until his conviction had been invalidated.  (Doc. 13, pp. 3–5.)  In Reply, Robinson argues that Plaintiff cannot point to any "controlling legal authority" that demonstrates that Heck applies to his claim.[9]  (Doc. 16, p. 3.)

### A.  Robinson's Argument that the Limitations Period Began on September 16, 2014

As an initial matter, Robinson's argument that the statute of limitations began to run on September 16, 2014 is preposterous.  Robinson maintains that when Plaintiff's criminal counsel filed a motion to compel the production of the videos on that date, Plaintiff was aware of the facts necessary to bring a civil claim for withholding exculpatory evidence.  Again, to mount a civil due process claim for the withholding of the video, Plaintiff first has to show that Mr. Shadle's interview was favorable to Plaintiff.  Allen, 611 F.3d at 745–46; Porter, 483 F.3d at 1305–08; Barber, No. 09-60635-CIV, 2010 WL 3384766, at *6.  Thus, Robinson contends that in September of 2014 Plaintiff knew (or should have known) that Mr. Shadle's interview and the video of it was exculpatory.  However, at that point in time, Plaintiff had not even seen the video (hence the motion to compel), and, as the Superior Court stated, "the true nature of Shadle's statement was obscured by Det. Robinson, who inappropriately altered the statement in a written

---

[9]  Through this argument and throughout his pleadings, Robinson appears to operate under the assumption that the burden is on Plaintiff to show compliance with the statute of limitations.  Robinson is mistaken. Noncompliance with the statute of limitations is an affirmative defense, and Defendant Robinson carries the burden to demonstrate that Plaintiff's lawsuit is untimely.  Steward v. Int'l Longshoreman's Ass'n., Local No. 1408, 306 F. App'x 527, 530 (11th Cir. 2009) ("A defendant's argument that a claim is barred by the statute of limitations raises an affirmative defense, and '[i]t is beyond dispute that the defendants have the burden of proof in establishing the elements of the affirmative defense of the statute of limitations.'" (quoting Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1292 (11th Cir.2005)). Regardless, as explained below, even if Plaintiff did carry the burden of showing that he timely brought his claims against Robinson, he has made that showing.

report." (Doc. 1-4, p. 10.) Additionally, to support his civil claim, Plaintiff has to show that the State suppressed the exculpatory nature of the interview; Plaintiff suffered prejudice as a result; and Robinson caused the exculpatory interview to be withheld through something more than mere negligence. Allen, 611 F.3d 740, 745–46; Porter, 483 F.3d at 1305–08; Barber, No. 09-60635-CIV, 2010 WL 3384766, at *6. Thus, Robinson's argument necessarily implies that when his counsel filed the motion to compel, Plaintiff should have known not only the exculpatory nature of the video (which he had never seen) but also that the video existed but was being withheld. However, in response to Robinson's motion to compel, the State told the Superior Court of Chatham County just the opposite, that the police department could not locate the video despite a diligent search.[10] (Doc. 1-4, p. 11.) Apparently, Robinson's counsel believes that Plaintiff should have been able to see through the State's arguments, within Robinson's mind, and within the walls of the Savannah-Chatham Metropolitan Police Department to spy the alleged wrongdoing that was afoot. The statute of limitations does not require Plaintiff to have had such clairvoyance.

Moreover, Robinson's argument ignores the fact that in September of 2014 Plaintiff had not yet been tried, much less convicted. Thus, Plaintiff would have been unable to meet the prejudice prong of his substantive due process claim at that time. Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir.1998) ("Due process is violated when a defendant is convicted in a trial in which the prosecution failed to disclose to the defense exculpatory or impeachment evidence that undermines confidence in the outcome of the trial. . . . Plaintiff, however, was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not

---

[10] Indeed, if Robinson somehow should have known in September of 2014 that the video still existed and the exculpatory nature of the interview, the district attorney's office and the Superior Court should have known the same. Of course, as the order denying the motion to compel makes clear, neither they nor Robinson and his counsel had any such knowledge.

implicate the protections of Brady."); see also Lopez v. City of Chicago, No. 06 C 6252, 2007 WL 3171332, at *3 (N.D. Ill. Oct. 24, 2007) (summarizing cases on the issue and holding "a criminal defendant who is acquitted could not have suffered any prejudice as is required under Brady").   In other words, until Plaintiff was convicted, there still existed a potential for an acquittal despite the state's withholding of exculpatory evidence.   Therefore, Plaintiff's due process claim had not yet arisen.

For all of these reasons, the Court rejects Defendant's argument that on September 16, 2014, the facts that would support a cause of action against Robinson were apparent to Plaintiff or should have been apparent to a person with a reasonably prudent regard for his rights.

### B.  Robinson's Argument that Heck does not Apply

Robinson's argument that Heck does not apply to Plaintiff's claims is also unsupportable.[11]   In Heck, a state prisoner filed a Section 1983 damages action against the prosecutors and investigator in his criminal case for their actions that had resulted in his conviction.  512 U.S. at 478–79.  The plaintiff claimed that the defendants "had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to [his] arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [his] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at [his] trial."  Id. at 479 (citations omitted).  The United States Supreme Court analogized the plaintiff's claim to a common-law cause of action for malicious prosecution, which requires as an element of the

---

[11]   Robinson repeatedly uses the term "tolling" to describe Heck's effect on the statute of limitations. (See, e.g., doc. 16, p. 4 ("Plaintiff's § 1983 claim against Det. Robinson does not qualify for the tolling of the statute of limitations under Heck.").)   However, Heck does not "toll" the statute of limitations. Rather, as explained below, claims that fall within the purview of Heck do not accrue until the plaintiff's conviction is reversed, expunged, or otherwise set aside.   Therefore, because the limitations period on such claims does not begin to run until favorable termination, there is nothing to "toll."

claim that the prior criminal proceeding be terminated in favor of the accused.  Id. at 484.  The

Supreme Court reasoned:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it had always applied to actions for malicious prosecution.
>
> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486–87 (underlined emphases added) (footnotes omitted).

"Under this standard, it is not unusual for a § 1983 claim to be dismissed for failure to

satisfy Heck's favorable termination requirement."   Desravines v. Fla. Dep't of Fin. Servs.,

No. 6:11-CV-235-ORL-22, 2011 WL 2292180, at *3 (M.D. Fla. May 23, 2011), *report and*

*recommendation adopted by* No. 6:11-CV-235-ORL-22, 2011 WL 2222170 (M.D. Fla. June 8,

2011) (citing Gray v. Kinsey, No. 3:09-cv-324/LC/MD, 2009 WL 2634205, at *9 (N.D. Fla.

Aug. 25, 2009) (finding plaintiff's claims barred by Heck's favorable termination requirement

where plaintiff sought invalidation of his traffic conviction but failed to appeal the conviction in

state court)); Domotor v. Wennet, 630 F. Supp. 2d 1368, 1379 (S.D. Fla. 2009) ("[T]o allow the

Plaintiff to circumvent applicable state procedures and collaterally attack her convictions in

federal court is the precise situation that Heck seeks to preclude.") (quotation omitted); St.

Germain v. Isenhower, 98 F. Supp. 2d 1366, 1372 (S.D. Fla. 2000) (holding plaintiff's convictions for the lesser-included offenses of false imprisonment and misdemeanor battery did not constitute a favorable termination and thus plaintiff's Section 1983 action was precluded by Heck); see also Cooper v. Georgia, No. CV413-091, 2013 WL 2253214, at *2 (S.D. Ga. May 22, 2013), *report and recommendation adopted by* No. CV413-091, 2013 WL 2660046 (S.D. Ga. June 11, 2013); Brown v. Renfroe, No. CV210-003, 2011 WL 902197, at *2 (S.D. Ga. Jan. 25, 2011), *report and recommendation adopted by* No. CV210-003, 2011 WL 892359 (S.D. Ga. Mar. 9, 2011), *aff'd sub nom.*, Brown v. Coleman, 439 F. App'x 794 (11th Cir. 2011).   The dismissal of a Section 1983 action under the favorable termination requirement is often called the "Heck bar."   See, e.g., Dixon v. Hodges, 887 F.3d 1235, 1239 (11th Cir. 2018).

As a necessary corollary to the Heck bar, the statute of limitations for a civil claim that falls within the ambit of Heck does not begin to run until the plaintiff's conviction has been reversed or otherwise invalidated.   Heck, 512 U.S. at 489.   As the Eleventh Circuit has explained:

> Statutes of limitation pose no difficulty to plaintiffs whose convictions or sentences have not been invalidated because their § 1983 action has not yet arisen. Heck, 512 U.S. at 489, 114 S. Ct. at 2374.  The statute of limitations begins to run when the cause of action accrues.  Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 1996).   The cause of action accrues on the date when the conviction or disciplinary action is reversed.  Id. at 1239–40.

Hale v. Riggins, 154 F. App'x 782, 784 n. 2 (11th Cir. 2005); see also Porter, 483 F.3d at 1304; Whiting v. Traylor, 85 F.3d 581, 586 (11th Cir. 1996) ("The statute of limitations will not bar the action as long as the action is promptly brought when the prosecution has terminated."); Abella v. Rubino, 63 F.3d 1063, 1066 (11th Cir. 1995).

Defendant Robinson entirely ignored Heck in his Motion to Dismiss and Supporting Brief.   (Doc. 9.)   After Plaintiff argued for Heck's application in his Response, (doc. 13),

Robinson replied, with scant authority and even scanter explanation, that the doctrine did not apply to Plaintiff's claims, (doc. 16, pp. 2–3). Robinson argues that the Supreme Court has limited Heck to claims for malicious prosecution and that Plaintiff "cannot demonstrate controlling legal authority" for the position that Heck applies to Plaintiff's claims that Robinson withheld exculpatory evidence.

Defendant's argument disregards overwhelming "legal authority." The United States Supreme Court has stated that Heck applies to a claim of a Brady violation. Skinner v. Switzer, 562 U.S. 521, 536 (2011) (citing Strickler v. Greene, 527 U.S. 263, 281–282 (1999)). The Court in Skinner reasoned that a Brady claim "necessarily yields evidence undermining a conviction" because "Brady evidence is, by definition, always favorable to the defendant and material to his guilt or punishment." Defendant Robinson's briefs do not mention, much less distinguish, Skinner.

Even before Skinner, the Eleventh Circuit concluded that Heck applies to civil rights claims that state actors withheld exculpatory evidence from a criminal defendant. Porter, 483 F.3d at 1304 n.6. In Porter, the plaintiff's conviction had previously been overturned due to Brady violations stemming from a detective's failure to provide the prosecution with two police reports which were favorable to the plaintiff. Following his release, the plaintiff sued the detective under Section 1983 for depriving him of his due process right to a fair trial. 483 F.3d at 1296–97. The Eleventh Circuit noted that because Heck applied to the plaintiff's due process claim, his complaint was not time-barred. Id. at p. 1304, n.6. The court explained,

> [the plaintiff's] due process claim against [the investigator] is not time-barred, because, under [Heck, 512 U.S. at 489–90], his § 1983 cause of action, seeking as it does damages to redress time spent in prison following conviction at a constitutionally deficient trial, did not accrue until we vacated his conviction in 2002. Id. ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or

sentence has been invalidated").  [Plaintiff's] § 1983 suit for damages, filed in 2004, is thus timely.".

Id.

Defendant Robinson attempts to minimize this portion of Porter as *dicta* and contends that Plaintiff "ignores the fact that the Eleventh Circuit, in that case, had already ordered the dismissal of the plaintiff's claims."  (Doc. 16, p. 3.)  In actuality, while the above-quoted language may be *dicta*, the Eleventh Circuit had not affirmed the dismissal of Plaintiff's claims prior to making this conclusion.   Moreover, Robinson does not credibly explain why the Eleventh Circuit's reasoning is not sound.  Robinson argues that the above-quoted language from Porter "does not reflect the specific, narrow language of Heck that limits its holding to cases within the malicious prosecution context."  (Doc. 16, p. 4.)   However, the holding of Heck is not limited to claims for malicious prosecution.[12]   Indeed, the claims in Heck itself were not for malicious prosecution.[13]   Rather, like Plaintiff in this case, the plaintiff in Heck claimed that the defendants (including an investigator) had tainted plaintiff's criminal trial by suppressing exculpatory evidence.   Id. at 479.   Defendant Robinson makes no effort to distinguish the similar facts of this case to those in Heck, and he fails to explain why the Supreme Court's reasoning

---

[12]   Though Defendant Robinson's counsel argues in the case at bar that Heck only applies to claims of malicious prosecution, in an unrelated case when representing a different defendant, counsel recognized that Heck contains no such limitation.  In that case, Robinson's counsel argued that a plaintiff's Section 1983 claim of excessive force during arrest was barred by Heck because the claim sought to collaterally attack the plaintiff's conviction which had not been vacated.  Brief, Hayward v. Kile, No. 6:07-CV-068 (S. D. Ga. Oct. 8, 2008) ECF No. 43-2, pp. 6–11.  This Court agreed and granted Robinson's counsel's client summary judgment because "to allow [the plaintiff] to prove his version of events—that police officers used unreasonable force against a suspect who was docile and non-resistant—would directly undermine [the plaintiff's] conviction for obstructing a police officer, and is thus Heck-barred."  Hayward v. Kile, No. 6:07-CV-068, 2009 WL 2045923, at *1 (S.D. Ga. July 13, 2009).

[13]   The Supreme Court in Heck did analogize the plaintiff's claims to common law claims of malicious prosecution.  512 U.S. at 484–86.  However, in doing so, the Court made clear that such Section 1983 claims and malicious prosecution claims were not one in the same.  Id.  In other words, by analogizing claims that would invoke the Heck bar to claims of malicious prosecution, the Supreme Court recognized that claims that would invoke the Heck bar and claims of malicious prosecution were not one in the same.

does not apply with equal force here.[14]  Moreover, in <u>Heck</u>, the Supreme Court explained that the bar to suit applies to any claim for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" and when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  <u>Heck</u>, 512 U.S. at 486–87. Consequently, <u>Heck</u> itself is "controlling legal authority" that defeats Robinson's argument.

Even if Defendant Robinson's constrained reading of <u>Heck</u> were not thwarted by the plain language of the decision itself, it would be rejected by courts' application of the decision in the nearly quarter-century since its issuance.  For example, in <u>Uboh v. Reno</u>, 141 F.3d 1000 (11th Cir. 1998), the plaintiff filed constitutional claims against law enforcement agents for creating false affidavits in relation to a prosecution against plaintiff for federal drug charges. Like Defendant Robinson, the agents argued that the plaintiff's claims were time-barred because he filed suit more than two years after their allegedly unlawful actions and that the plaintiff could not rely upon the <u>Heck</u> bar because he did not bring a claim for malicious prosecution.  <u>Uboh</u>, 141 F.3d at 1001-02.  The Eleventh Circuit rejected this reasoning explaining:

> <u>Even assuming, as the defendants argue, that [plaintiff's] complaint does not fall within the confines of a constitutional claim for malicious prosecution,</u> there is little doubt that the allegations of fraud and malice with respect to the wiretap and indictment would, if proven, call into doubt the validity and justification of the criminal proceedings that were then pending against [plaintiff].  <u>In other words, a civil proceeding challenging the grounds on which the prosecution against [plaintiff] had been commenced indirectly would implicate the question of [plaintiff's] guilt; this type of parallel inquiry by way of a civil suit prior to the resolution of a criminal action based on the same set of events is precisely the quandary that Heck prohibits.</u>  The defendants' suggestion that [plaintiff] should have filed his action at the time the alleged events giving rise to this action transpired would have placed [plaintiff] effectively in a double-bind: Had he filed the action simultaneously when he discovered the defendants' alleged misdeeds, his case would have been dismissed under <u>Heck</u>; had he waited to file the action (as he did) until the criminal proceeding was resolved in his favor, the action would have been dismissed under the statute of limitations. We decline to adopt a

---

[14]  To put it another way, under Defendant's reasoning, <u>Heck</u> would not apply to the facts before the Supreme Court in <u>Heck</u>.

> construction of either the complaint or the applicable law that permanently would
> preclude the plaintiff from filing any action at all.

Id. at 1006–07.  In subsequent decisions, the Eleventh Circuit has reiterated that Heck applies to claims for withholding exculpatory evidence and similar claims.  Salazar, 476 F. App'x at 385–86 ("[T]he district court properly dismissed Salazar's complaint. . . .  In his complaint, [plaintiff] asserted the essential elements of a Brady claim: he asserted that the prosecution intentionally and maliciously withheld exculpatory evidence from him, which prejudiced him.  This exculpatory evidence would necessarily undermine his conviction." (citing Skinner) (internal citations omitted)); Thompson v. Rundle, 393 F. App'x 675, 680 (11th Cir. 2010) (applying Heck bar to uphold dismissal of Section 1983 claims that state failed to provide plaintiff access to exculpatory evidence); see also Abella, 63 F.3d at 1065 (dismissing, under Heck, claim that defendants conspired to ensure plaintiff's conviction by fabricating testimony and other evidence in criminal trial).

Heck is one of the most cited and relied-upon decisions in modern federal jurisprudence. The Court need not detail every application of Heck to dispose of Defendant's timeliness arguments.  However, it is instructive that, in addition to the Eleventh Circuit, every other Circuit Court of Appeals has found that Heck applies to civil claims for withholding exculpatory evidence and other claims akin to those plaintiff raises here.  See, e.g., Ortiz v. New Jersey State Police, 747 F. App'x 73, 77–78 (3d Cir. 2018) ("[Plaintiff's] claims that the defendants fabricated and suppressed evidence are barred by Heck because success on those claims would necessarily imply the invalidity of her conviction."); Jordan v. Blount Cty., 885 F.3d 413, 415 (6th Cir. 2018) (discussing Heck and explaining that "[a] Brady claim under § 1983 cannot accrue, therefore, until the criminal proceeding so terminates [in the plaintiff's favor]"); Buckley v. Ray, 848 F.3d 855, 867 (8th Cir. 2017) (Section 1983 claim against law enforcement officials

for withholding exculpatory evidence accrued when the state trial court vacated his conviction); Griffin v. Baltimore Police Dep't, 804 F.3d 692, 695–96 (4th Cir. 2015) (Section 1983 action, alleging that police and prosecution withheld evidence during plaintiff's state murder trial in violation of due process was barred by Heck because claims were predicated on alleged Brady violations which would, if proven, necessarily imply the invalidity of prisoner's convictions); Owens v. Baltimore City State's Att'ys Office, 767 F.3d 379, 392 (4th Cir. 2014) ("That the Supreme Court would require courts to analogize to the tort of malicious prosecution for purposes of *delaying* the onset of a Brady claim, yet eschew the very same analogy for purposes of *calculating* the onset of limitations for a Brady claim, strikes us as exceedingly unlikely."); Rosales-Martinez v. Palmer, 753 F.3d 890, 896 (9th Cir. 2014) (success on plaintiff's civil claims for failure to disclose exculpatory evidence about government's witness would "mean that his conviction was invalid" and "Heck therefore teaches that [plaintiff's] claims did not accrue until the [state] court vacated those convictions . . . . Since [plaintiff] commenced his lawsuit . . . less than two years after [the date his convictions were vacated] his claim was timely and the district court erred in dismissing it as time-barred."); Johnson v. Dossey, 515 F.3d 778, 782 (7th Cir. 2008) ("A Brady claim, on the other hand, is not controlled by [Wallace v. Kato, 549 U.S. 384 (2007)] but rather by [Heck]. . . . It follows, then, that the claim based on a Brady violation did not accrue until [the plaintiff] was acquitted . . . ."); Newsome v. McCabe, 256 F.3d 747, 752 (7th Cir. 2001) (withholding exculpatory evidence claim was subject to accrual rule announced in Heck), *abrogated on other grounds by* Manuel v. City of Joliet, Ill., 137 S. Ct. 911 (2017); Smith v. Gonzales, 222 F.3d 1220, 1222 (10th Cir. 2000) (Section 1983 claims for withholding material exculpatory evidence accrued and statute of limitations began to run when federal court of appeals vacated state conviction); Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 557

(10th Cir. 1999) ("[Plaintiff's] claims involving the alleged destruction or suppression of exculpatory evidence is [sic] closely related to, if not part of, his malicious prosecution claims. . . malicious prosecution and <u>Brady</u> claims may implicate <u>Heck</u>"); <u>Amaker v. Weiner</u>, 179 F.3d 48, 52 (2d Cir. 1999) (because <u>Heck</u> bar applied to plaintiff's claim that his right to meaningful court access had been denied by the withholding of exculpatory evidence, under <u>Heck</u>, the statute of limitations begins to run upon the invalidation of conviction, not the time of the alleged government misconduct); <u>Hamilton v. Lyon</u>s, 74 F.3d 99, 103 (5th Cir. 1996) (claims that police officer altered and destroyed evidence relevant to the charges against plaintiff were barred by <u>Heck</u>); <u>Rodriguez v. Carhart</u>, 73 F.3d 355, at *1 (1st Cir. 1996) (unpublished table decision) ("The claim that defendants conspired to procure Rodriguez's conviction by unconstitutional means, and to cover up their actions, essentially challenges the validity of the underlying conviction."); <u>see also</u> <u>Handlon v. United States</u>, No. 217-CV-273-FTM-99MRM, 2017 WL 2311759, at *7 (M.D. Fla. May 26, 2017) ("Here, Plaintiff asserts that the defendants either falsified documents and evidence used in his prosecution, or failed to discover that certain incriminating emails were actually written by someone else. These assertions necessarily implicate the validity of his underlying . . . convictions.  Absent the invalidation of his convictions, which has not occurred, Plaintiff's civil rights claims for monetary damages are barred." (citing <u>Heck</u>)); <u>Denton v. Stokes</u>, No. 2:12-CV-04145-SLB, 2014 WL 1388389, at *5 (N.D. Ala. Apr. 9, 2014) ("Therefore, where the plaintiff has asserted a Fourth Amendment <u>Bivens</u> claim in this action based upon the same events made the basis of a <u>Brady</u> challenge to his criminal conviction, it seems clear that the <u>Bivens</u> claim is premature, absent a showing that the criminal conviction has been invalidated by one of the methods identified in <u>Heck</u>."); <u>Platts v. Buchanan</u>, No. CIV.A. 12-1788, 2013 WL 4810486, at *6 (W.D. Pa. Sept. 9, 2013) ("Because

success in establishing that the Defendants falsely convicted Plaintiff, by allegedly lying in the course of the criminal proceedings and committing perjury and by prosecuting him beyond the applicable statute of limitations for the crimes and by withholding exculpatory evidence, would necessarily render his convictions or sentences invalid, the reasoning of Heck, renders Plaintiff's claims non-cognizable in this [Administrative Procedures Act] action absent an invalidation of those convictions."); Brown v. City of Miami, No. 08-22798-CIV, 2009 WL 1765984, at *1–2 (S.D. Fla. June 18, 2009) ("A § 1983 claim for damages based on a Brady violation generally accrues when the conviction is set aside." (citing Johnson, 515 F.3d at 782)); Holloman v. White, No. 4:09-cv-50, 2009 WL 3380473, at *1 (S.D. Ga. Oct. 19, 2009) ("[F]or if [plaintiff] were to prevail on his 'fabricated evidence' suit for monetary damages, his victory in the § 1983 action would 'necessarily imply the invalidity of his conviction.'" (quoting Heck, 512 U.S. at 487)); Gordon v. Devine, No. 08 C 377, 2008 WL 4594354, at *6 (N.D. Ill. Oct. 14, 2008) ("Due Process claims regarding a plaintiff's right to a fair trial and exculpatory information pursuant to Brady necessarily raise questions about the validity of a conviction, and thus, are postponed under Heck."); Katka v. Mills, No. 1:05-CV-0954-JOF, 2008 WL 11400762, at *7 (N.D. Ga. Feb. 27, 2008) ("A decision on such facts, if favorable to the Plaintiff, would almost certainly be enough to invalidate a conviction on Plaintiff's per se conviction for driving under the influence. Such adjudications are exactly the kind the Supreme Court sought to prohibit in Heck.").

In the face of this legion of case law, the most that Defendant Robinson can muster is a citation to one opinion from the Middle District of Alabama, Hall v. Alabama, No. 2:09-CV-342-MHT WO, 2010 WL 582076 (M.D. Ala. Feb. 18, 2010). In Hall, the pro se plaintiff alleged that the defendants had committed Brady violations during his criminal proceedings by failing to provide a critical video recording to his criminal defense counsel. 2010 WL 582076 at *4. The district court ruled that the claims based on the Brady violations accrued when he knew of the facts and

circumstances giving rise to those claims.  Id. at *6.  The court found that the plaintiff gained such knowledge when the state judge dismissed the criminal charges due to the state's bad conduct.  Id. Because the plaintiff filed the lawsuit more than two years after the state court's dismissal, the district court found the claims to be untimely.  Id.  The Court finds Hall to be unpersuasive for numerous reasons.  For one, the court made no mention of Heck during its brief discussion of the Brady claim.  Id.[15]  Thus, it is not clear if the court even considered, much less decided, whether Heck applied to this claim.  Additionally, in Hall, the court used the date the state court dismissed the charges against the plaintiff as the date for calculating the statute of limitations.  Id.  In the case at hand, the Chatham County Superior Court granted Plaintiff's motion for a new trial on December 16, 2016, and he brought this lawsuit on July 24, 2018, well within two years later.  Thus, even under the approach in Hall, the primary case Defendant Robinson relies upon, Plaintiff's claims are timely.

Even if the plain language of Heck and legions of precedent did not thwart Plaintiff's timeliness defense, the application of Heck's principles to the facts of this case would.  Under Heck the Court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  512 U.S. at 487.[16]  As set forth in Subsection I.A. above, to succeed on his claims that Robinson withheld exculpatory evidence, Plaintiff must at

---

[15]  To be sure, the court in Hall discussed Heck as to the plaintiff's malicious prosecution claims.  2010 WL 582076 at *6.  However, the district court provided no explanation of why it applied Heck to the malicious prosecution claims but did not even discuss Heck in relation to the withholding evidence claims.  To the extent that the decision can be read to imply that Heck does not apply to withholding exculpatory evidence claims, this court—consistently with the numerous courts cited above—disapproves of such an implication.

[16]  Robinson facially recognizes and even emphasizes this important principle.  (Doc. 16, p. 2 ("However, Heck applies to only a limited number of § 1983 actions "'whose **successful prosecution** would **necessarily imply** that the Plaintiff's criminal conviction was wrongful.'" (quoting Heck, 512 U.S. at 486 n.6) (emphases supplied by Defendant).)  However, Robinson does not engage in any discussion whatsoever as to this essential question.  He does not delve into any analysis of what the successful prosecution of Plaintiff's claims in this lawsuit would imply about Plaintiff's vehicular homicide convictions.  Indeed, Robinson does not even assert that Plaintiff's claims do not imply the wrongfulness of his convictions.  He just states that Plaintiff "cannot demonstrate controlling legal authority" on this point.  (Id. at p. 3.)

least show that (1) Mr. Shadle's interview and video were favorable to him; (2) that the State suppressed the favorable evidence; and (3) that Plaintiff suffered prejudice as a result.[17]  See Salazar, 476 F. App'x at  385; Porter, 483 F.3d at 1304; McMillian, 88 F.3d at 1567; see also  Bratt v. Genovese, No. 8:13-CV-3210-T-36AEP, 2015 WL 12835684, at *7 (M.D. Fla. Nov. 23, 2015); Spadaro v. City of Miramar, No. 11-61607-CIV, 2013 WL 495780, at *17 (S.D. Fla. Feb. 7, 2013).  Plaintiff had to make these very same showings in or order to succeed on his Brady attack to his criminal convictions.  Allen, 611 F.3d at 745–46.  Moreover, once Plaintiff made these three showings, the Superior Court was required to vacate Plaintiff's conviction.  Poventud, 750 F.3d at 133.  Put another way, success on Plaintiff's civil claims that Robinson withheld exculpatory evidence necessarily implies that Plaintiff's criminal conviction must be vacated.

Indeed, the Superior Court's Order granting Plaintiff's motion for a new trial discussed in detail factors that are all critical to Plaintiff's civil claims. (Doc. 1-4, pp. 8–14 (finding that the video evidence was favorable to Plaintiff's defense, that Plaintiff did not possess the favorable evidence, that the State suppressed the favorable evidence, and that a reasonable probability exists that the outcome of Plaintiff's criminal trial would have been different if the evidence had been provided to Plaintiff and his counsel).)  If Plaintiff's federal civil claims were pending at the same time the Superior Court was considering these issues, this Court would be assessing the validity of a state court conviction that had not been overturned and the validity of which was

---

[17]   Unlike in the criminal context, to succeed on his civil claim, Plaintiff will also have to show that Robinson caused the exculpatory interview to be withheld and that Robinson acted with something more than mere negligence.  Porter, 483 F.3d at 1305–08; Barber, No. 09-60635-CIV, 2010 WL 3384766, at *6.  These additional elements do not take Plaintiff's claims out of Heck's purview.  Rather, all the elements of a Brady criminal attack are included within the elements of the civil claim.  In other words, the elements of a civil claim are broader than but inclusive of the elements of a criminal attack.  Therefore, success on a civil claim necessarily implies that a plaintiff can meet the elements to attack his criminal conviction.  This would not be the case if the elements of the civil claim were narrower than the elements of the criminal attack.  In that situation, a plaintiff could succeed on the civil claim without necessarily implying success on the criminal attack.

still an issue pending before the Superior Court. "[T]his type of parallel inquiry by way of a civil

suit prior to the resolution of a criminal action based on the same set of events is precisely the

quandary that <u>Heck</u> prohibits." <u>Uboh</u>, 141 F.3d at 1006.

For all of these reasons, the <u>Heck</u> bar applies to Plaintiff's claim that Defendant Robinson

violated his due process rights by withholding exculpatory evidence. Therefore, Plaintiff's claim

did not accrue until, at the earliest,[18] on December 16, 2016 when the Superior Court granted his

motion for a new trial and vacated his conviction. He brought this lawsuit less two years later, on

July 24, 2018. Therefore, the Court **DENIES** Defendant's Motion to Dismiss for untimeliness.[19]

---

[18]  Arguably, Plaintiff's claim did not accrue until January 4, 2018, when the Superior Court granted the State's motion to *nolle prosequi* the charges against Plaintiff. The Court need not decide that issue here, however, because Plaintiff's claims are timely even by the earlier date of the vacating of the conviction.

[19]  The parties did not raise—and the Court need not decide—another reason that Plaintiff's claims may be timely. Even if his claims were not covered by <u>Heck</u> and the statute of limitations began to run prior to the vacatur of Plaintiff's conviction, the period may have been equitably tolled. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." As a result of this statutory prohibition, courts must dismiss an inmate's monetary damages claim for purely mental and emotional injury suffered while confined under Section 1997e(e) without prejudice to allow the inmate to refile his claims when and if he is released. <u>Harris v. Garner</u>, 216 F.3d 970, 980 (11th Cir. 2004). The Eleventh Circuit has not decided but has suggested that the running of the statute of limitations might be equitably tolled while the application of the PLRA precluded suit. <u>Napier v. Preslicka</u>, 314 F.3d 528, 534 n.3 (11th Cir. 2002) ("The Eleventh Circuit has not yet been faced with a case that involves a prisoner's claim that is both barred by the PLRA during imprisonment and barred by the applicable statute of limitations after release from prison, thereby giving the plaintiff no opportunity to ever have his claim heard on the merits by a federal court. We proffer, but do not hold, as that issue is not before us, that such a result may be mitigated by the doctrine of equitable tolling . . . ."). In this lawsuit, Plaintiff seeks compensatory and punitive damages and alleges mental and emotional injury, but he does not allege any physical injury. Additionally, while it does not appear that the Eleventh Circuit has addressed whether claims such as those Plaintiff raises here satisfy the "suffered while in custody" requirement, it has held that claims arising from an allegedly mistaken arrest satisfies that requirement. <u>See</u> <u>Id.</u> Thus, if Plaintiff had brought this lawsuit while he was still detained, his claims arguably would have been barred by Section 1997e(e). If so, even if the statute of limitations had commenced prior to the vacatur of Plaintiff's conviction, it was arguably tolled until his release.

**IV.    Denial of Defendant Robinson's Motion to Dismiss Plaintiff's Claim of Withholding Exculpatory Evidence for Lack of Causation**

Defendant Robinson argues that Plaintiff's Complaint fails to allege a causal connection between Robinson's conduct and the violation of Plaintiff's constitutional rights.  (Doc. 9, pp. 4–6; doc. 16, pp. 6–8.)  Defendant maintains "the factual matter set forth by Cannon demonstrates that the prosecution and defense were on notice that Shadle's statement were [sic] recorded by video." (Doc. 16, p. 6.)  Indeed, Robinson noted in his report that the statement was recorded.  However, in that same report, Robinson also misrepresented Mr. Shadle's statement and thereby entirely obscured the exculpatory nature of Mr. Shadle's interview.  Moreover, though the video's existence was noted in the report, the video itself and its exculpatory nature remained hidden from Plaintiff and his counsel until well after Plaintiff's trial.  Robinson's argument ignores the allegations of Plaintiff's Complaint that connect Robinson to that withholding.  Plaintiff alleges that Robinson recorded the interview and then "Defendant Robinson wrongfully withheld the video recording of Mr. Shadle's interview, thereby preventing such evidence from being turned over to Plaintiff and his defense counsel." (Doc. 1, pp. 4, 9.)

Plaintiff attempts to analogize this case to <u>Porter</u>.  In that case, the plaintiff alleged that the investigator failed to turn over an exculpatory report to the prosecuting attorney's office and, therefore, the prosecuting attorney did not have the report and could not disclose the report to the plaintiff's criminal defense counsel, resulting in a violation of the plaintiff's rights to a fair trial. <u>Porter</u>, 483 F.3d at 1308–09.   The district court entered summary judgment in favor of the investigator and the plaintiff appealed.  <u>Id.</u> at 1297.  In assessing plaintiff's theory of causation, the Eleventh Circuit identified the "focus of the inquiry" to be "whether the prosecution received the report." <u>Id.</u> at 1310.  Based on the undisputed facts before it, the court found that the prosecuting attorney's office had possession of the report prior to the plaintiff's criminal trial.  <u>Id.</u> at p. 1310.

Thus, the court concluded, "it is impossible to say that any act or omission by [the investigator] caused the prosecution not to receive the [exculpatory] report." Id.

Defendant Robinson fails to recognize that the facts of this case are the exact opposite of what occurred in Porter. Whereas in Porter there was no dispute that the prosecuting attorney's office received the exculpatory evidence prior to the plaintiff's criminal trial, here there is no dispute that the prosecuting attorneys did not receive the evidence. The district attorney's office did not possess the videos of the witness interviews, including the video of Mr. Shadle's interview, until well after Plaintiff's criminal conviction. Indeed, in response to Plaintiff's motion to compel, the district attorney's office told the Superior Court it did not have the videos, because the police department could not locate the videos. (Doc. 1-4, p. 2.) Therefore, the Superior Court could not order the prosecution to turn the videos over. (Id.) The video remained in the sole possession of the Savannah-Chatham Metropolitan Police Department until more than a year after Plaintiff's conviction. Therefore, on the facts of this case, "the focus of the inquiry" from Porter —that is "whether the prosecution received the [exculpatory evidence]" —clearly swings in Plaintiff's favor. Id. at p. 1310.

Robinson nonetheless attempts to analogize this case with Porter by arguing that Robinson's report put the prosecution and defense counsel "on notice of the video's existence and relevance to the case." (Doc. 9-1, p. 6.) This line of reasoning entirely ignores the fact that the prosecution and defense counsel could not obtain a copy of the video despite considerable efforts to do so. Someone within the police department kept the video from the prosecution, the Superior Court, Plaintiff, and his criminal counsel. Indeed, in its order granting Plaintiff's Motion for a New Trial, the Superior Court compellingly explained that Plaintiff did not possess this favorable evidence even though the report identified Mr. Shadle as a witness. (Doc 1-4,

pp. 10–11.)   Further, under the well-pleaded allegations of Plaintiff's Complaint, Defendant Robinson played a critical causal role in this suppression of the video.   Plaintiff contends that after recording Mr. Shadle's interview, "Robinson wrongfully withheld the video recording of Mr. Shadle's interview, thereby preventing such evidence from being turned over to Plaintiff and his defense counsel."[20]   (Doc. 1, p. 9.)  Moreover, not only did the district attorney's office and Plaintiff's criminal defense attorney not possess the video of Mr. Shadle's interview, they also did not know of the exculpatory nature of his statement.   As the Superior Court explained, Plaintiff's criminal trial counsel "was effectively misled by the police on the substance of Mr. Shadle's statement." (Doc. 1-4, p. 11.)  Robinson played a critical role in this concealment of the exculpatory nature of Mr. Shadle's interview.   As laid out above and recognized by the Superior Court, "the true nature of Shadle's statement was obscured by Det. Robinson who inappropriately altered the statement in a written report."  (Id. at p. 10.)

Put succinctly, under Plaintiff's well-pleaded allegations Defendant Robinson played a critical causal role in the withholding of exculpatory evidence and the deprivation of Plaintiff's right to a fair trial.   Accordingly, the Court **DENIES** Defendant Robinson's Motion to Dismiss for lack of causation.

---

[20]   Robinson does not acknowledge this specific allegation of his involvement much less argue that the allegation is implausible.   However, given the alleged facts that (1) Robinson was the officer that interviewed Mr. Shadle and videoed his statement; (2) Robinson then misrepresented Mr. Shadle's statement in his report; (3) someone within the police department told the district attorney's office that the video could not be located during Plaintiff's criminal proceedings; and (4) an officer other than Robinson later found the videos in the police department's files, this allegation does not appear implausible.

## CONCLUSION

For all of the reasons set forth above, the Court **DENIES** Defendant Robinson's Motion to Dismiss.  The Court notes that the progress of this case has been unfortunately delayed while the Court considered the instant Motion as well as Robinson's Motion to Stay this case while the Motion to Dismiss was pending.[21]   Counsel is advised the Court expects this case to move expeditiously from this point forward, and the deadlines in the Court's February 5, 2019 scheduling order will not be set aside absent an extraordinary showing.

**SO ORDERED**, this 11th day of March, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[21]   Fortunately, the Magistrate Judge denied the Motion to Stay after taking a "preliminary peek" and finding it unlikely that the Court would grant Robinson's Motion to Dismiss.  (Doc. 21.)  Nonetheless, the briefing and consideration of that Motion delayed the filing of Rule 26(f) Report and the issuance of a Scheduling Order.